USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROCCO J. CENTRONE,

      Plaintiff,

-against-

NANCY A. BERRYHILL,
Acting as Commissioner of Social Security,

      Defendant.

13-cv-06566 (NSR)(LMS)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Rocco J. Centrone ("Plaintiff") commenced this action, pursuant to 42 U.S.C. § 405(g), challenging the administrative decision of the Commissioner of Social Security ("the Commissioner"), which denied Plaintiff's applications for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This case was referred to Magistrate Judge Lisa M. Smith ("MJ Smith"), pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), to issue a Report and Recommendation ("R & R") to resolve the respective parties' motions for judgement on the pleadings. Now before the Court is MJ Smith's R & R, recommending that Plaintiff's motion be denied, and the Commissioner's cross-motion be granted. (*See* Docket No. 25.) For the following reasons, the Court adopts MJ Smith's R & R in its entirety. As such, Plaintiff's Motion for Judgment on the Pleadings is DENIED, and the Commissioner's Cross-Motion for Judgment on the Pleadings is GRANTED.

## BACKGROUND

  The following facts are taken from the administrative record and the parties' submissions. In July 2010, Plaintiff, applied for DIB. Plaintiff alleged he suffered from HIV, asthma, and depressive disorder. Due to his disabilities, Plaintiff was unable to work for the period of

1

February 15, 2009 through the present time. Plaintiff's initial application for DIB was denied and he timely requested a hearing. On April 14, 2011, Plaintiff appeared before an administrative law judge ("ALJ"). On October 19, 2011, the ALJ issued a decision denying Plaintiff's application. Plaintiff appealed the decision to the Appeals Council, who subsequently denied Plaintiff's request to overturn the ALJ's determination.

The ALJ determined Plaintiff suffered from severe impairments such as HIV[1], history of bronchial asthma, depressive disorder, and borderline intellectual function. (AR 16). To be deemed disabled, however, the impairments or the combination of impairment(s) must meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 4040.1525 and 404.1526) (the "list of impairments").[2] (AR 17). The ALJ determined Plaintiff's impairments did not meet or equal the severity of any on the list of impairment. *Id*. After reviewing the record, and weighing all the proffered evidence, the ALJ determined Plaintiff was capable of performing medium work. (AR 18). Medium work is defined as work involving the lifting of no more than fifty pounds at a time with frequent lifting or carrying objects weighing up to twenty-five pounds. 20 CFR 404.1567©. The ALJ noted Plaintiff was able to understand, remember and carry out simple instructions, and perform simple activities. (AR 18) Because of his limitations, Plaintiff would have difficulties learning new tasks, and understanding, remembering and carrying out complex instructions. *Id*. The ALJ also found Plaintiff can relate to others, appropriately deal with stress, capable of maintaining

---

[1] As of January 2009, Plaintiff's HIV was deemed asymptomatic. (AR-125)
[2] 20 CFR Part 404, Subpart P, Appendix 1, describes for each of the major body systems impairments that are consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. Part A contains criteria that typically applies to individuals age 18 and over. If the impairment(s) does not meet the criteria of a listing, the impairment may medically equal the criteria of a listing. See 20 CFR § 416.925. Medical equivalence is explain under rules 20 CFR § 416.926.

attention, concentration and regular schedules, but would have difficulties making appropriate decisions. *Id.*

Following his denial to the Appeals Council, Plaintiff commenced the instant action on July 31, 2013, challenging the Commissioner's decision denying his applications for DIB. By order of reference, the matter was referred to MJ Smith. (ECF No. 10.) Plaintiff and Defendant both moved for judgment on the pleadings. (ECF Nos. 19, 23.) In his Memorandum of Law ("Memorandum") in support of his motion for judgment on the pleadings, Plaintiff raised two salient points: the ALJ failed to follow the treating physician rule; and the ALJ failed to properly evaluate Plaintiff's credibility. Defendant cross-moved for judgment on the pleadings seeking to affirm the Commissioner's decision denying benefits.

On April 24, 2017, MJ Smith issued the R & R recommending that this Court deny Plaintiff's motion and grant the Commissioner's cross-motion. In her R & R, MJ Smith determined the ALJ utilized the proper legal standards in it analysis and that the ALJ's determination, as adopted by the Commissioner, is supported by substantial evidence. In his objection to MJ Smith's R & R, Plaintiff makes the same arguments raised in his Memorandum: the ALJ failed to properly weigh the medical opinion of Plaintiff's treating doctor; and failed to properly evaluate Plaintiff's credibility.

**STANDARD OF REVIEW**

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so designated by a district court. *See* Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); accord Fed. R. Civ. P. 72(b)(2), (3*).* However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); accord *Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS,* 892 F.2d 15, 16 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 72 advisory committee note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

To the extent a party makes specific objections to an R & R, those parts must be reviewed *de novo*. 28 U.S.C. 636(b)(l); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In a *de novo* review, a district court must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdich*, No. 04-cv-5061, 2007 U.S. Dist. LEXIS 4592, at *2 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). But to the extent "a petition makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error." *Harris v. Burge*, No. 04-cv-5066, 2008 U.S. Dist. LEXIS 22981, at * 18 (S.D.N.Y. Mar. 25, 2008). The distinction turns on the whether a litigant's claims are "clearly aimed at particular findings in the magistrate's

proposal" or are a means to take a "'second bite at the apple' by simply relitigating a prior argument." *Singleton v. Davis*, No. 03-cv-1446, 2007 U.S. Dist. LEXIS 3958, at *2 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

**DISABILITY BENEFITS**

To be eligible to receive DIB, a claimant must be disabled within the meaning of the Act. See 42 U.S.C. §§ 423(a), (d). To be deemed disable with the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof and must demonstrate his or her disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C.A. § 423 (d)(5)(A); see also *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983).A claimant's subjective complaints of pain without more, is insufficient to meet the requisite showing. 42 U.S.C.A. § 423 (d)(5)(A).

When evaluating a claim of disability, the ALJ is required to undertake a five-step procedure set out in the regulations governing the administration of Social Security benefits. 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, the second step requires the ALJ to consider whether the claimant has a "severe impairment" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does suffer such an impairment, the third step requires the

ALJ to determine whether this impairment meets or equals one on the List of Impairments. *Id*. If the claimant's impairment meets or equals one of those listed, the claimant is presumed to be disabled "without considering the [claimant's] age, education, and work experience." *Id.* At the fourth step, the ALJ must consider the claimant's residual functional capacity ("RFC') and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If it is determined that the claimant can still perform relevant work, he or she will be found not to be disabled (see paragraphs (f) and (h) of this section and § 404.1560(b)). *Id.* Lastly, if claimant is disabled, the ALJ must determine he or she is capable of performing any other work. 20 C.F.R. § 404.152(a)(4)(v). With respect to the last step, the burden shifts to the Commissioner. *Id.*

**TREATING PHYSICIAN RULE**

Generally, the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir. 1999) (citing *Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998) (internal citations omitted)); 20 C.F.R. § 404.1527(d)(2)); see *also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). When presented with medical evidence in support of a disability, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983). However, where the treating physician's opinion is not consistent with other substantial evidence in the record, such as the opinion of other medical experts, the treating physician's opinion should not be afforded due deference nor controlling weights. 20 C.F.R. § 404.1527(d)(2*); Halloran v. Barnhart*, 362 F.3d 28 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002)

**ASSESSING CREDIBILITY**

An ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of all medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). In accessing a claimant's credibility, an ALJ may consider demeanor, and other indicia of credibility in light of the objective evidence in the record. *Id.* In social security disability cases, an ALJ may also consider claimant's work history in assessing his or her credibility. 20 C.F.R. § 416.929(c)(3); *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). While an ALJ's findings, inclusive of credibility determinations, has some probative force, such findings must be supported by objective evidence in the record. *Peterson v. Gardner*, 391 F.2d 208, 209–10 (2d Cir. 1968).

**DISCUSSION**

Plaintiff timely objected to the R & R. A review of Plaintiff's objections suggest that he merely raises the same objections or contentions previously raised in his memorandum in support of his motion for judgment on the pleading . Thus, the Court reviews the R & R for clear error. Having found no clear error, Plaintiff's motion must be denied.

To the extent Plaintiff's objections are deemed specific, such that they are not viewed as an attempt to get a second bite at the apple, the Court conducts *de novo* review. The Court will address each objection in turn.

The ALJ issued a decision, dated October 19, 2011, finding that Plaintiff was not disabled within the meaning of the Act. The ALJ initially determined that Plaintiff did not engage in substantial gainful activity since February 2009, the alleged onset date. (AR-16) Next, the ALJ determined whether Plaintiff suffered from a "medically determinable physical or mental impairment." See 42 U.S.C. § 423(d)(1)(A). Based upon the proffered records, the ALJ

determined that Plaintiff did in fact suffer from severe impairments such as HIV, history of bronchial asthma, depressive disorder, and borderline intellectual function. (AR 16).

In assessing the severity of Plaintiff's impairments, the ALJ considered the degree to which Plaintiff's impairments limited four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompression. *Id*. Based on Plaintiff's demonstrated ability to take care of his personal needs, clean his apartment, shop, and take public transportation, the ALJ determined Plaintiff had "mild restriction" in activities of daily living. *Id.* In the area of social functioning, the ALJ found that Plaintiff had no difficulties. The ALJ referenced Dr. Miller's report which mentioned Plaintiff's girlfriend and no difficulties getting along with others (AR-16). The Court notes that Dr. Spektor's treatment records, though not specifically referenced by the ALJ, likewise has multiple references to Plaintiff being formerly married, having a girlfriend, and engaging in other social activities and interactions. (AR192-506)

In the area of concentration, persistence, or pace, the ALJ determined Plaintiff had moderate difficulties. (AR-16.) The ALJ noted that Dr. Miller, following his mental status examination, found Plaintiff's attention and concentration was impaired due to limited intellectual functioning. *Id.* The ALJ also credited Plaintiff's testimony, thus giving credence to Plaintiff's testimony, that he occasionally read books and was able to focus on what he was reading except when he took medication. (AR-17.) The ALJ found Plaintiff did not experience any episode of decompensation. *Id.*

The ALJ also noted Dr. Kessel's findings that Plaintiff had mild restrictions of activities of daily living; mild difficulty maintaining social function; mild difficulty maintaining concentration, persistence, or pace; and one or two repeated episodes of deterioration each of

extended duration. Based upon the evidence, it was the ALJ's determination that individually and collectively, Plaintiff's impairments did not met or medically equal the severity of impairments found in the list of impairments (20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 4040.1525 and 404.1526). (AR-17.) While acknowledging that Plaintiff had a full scale IQ of 60, which would meet the criteria for subparagraph c of the listing, the ALJ found no evidence in the record to support a finding that the onset of impairment occurred before the age of twenty two.[3] (AR-18.) As noted by the ALJ, the record evidence demonstrates Plaintiff was a high school graduate, had a long work history, was able to shop, pay his bills and was able to attend to his personal needs. *Id.*

Upon concluding that Plaintiff's mental impairment did not meet nor medically equal a disability of one on the List of Impairments, the ALJ considered Plaintiff's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In determining Plaintiff's RFC, the ALJ applied a two-step analysis in which it first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce pain or other symptoms to the claimant. AR-19. Once it determined that the impairment could be expected to produce pain or symptoms, the ALJ was required to evaluate the intensity, persistence, or functionally limited effects of the pain or symptoms. A review of the record indicates the ALJ found Plaintiff was born in 1956, 56 years old at the alleged onset date. He possessed a high school education and a relevant work history as a construction work. While determining that Plaintiff's disability or impairment, *inter alia*, borderline intellectual function, could reasonably be expected to cause symptoms, the ALJ did not find Plaintiff credible concerning the intensity, persistence and limiting affects of the symptoms. AR-19. In making her determination, the ALJ relied on the Jacobi Medical Center

---

[3] Of noteworthy, the Court's own review of the record reveals that it is void of any evidence to support a finding that the onset of Plaintiff's disability occurred prior to age twenty-two. Further the record is void of any evidence to support a finding of the onset of the alleged disability, mental retardation, prior to age 22.

records, the reports and opinions of examining doctors and consultants. AR-19 – 32. Of relevance, the medical records, which includes Dr. Spektar's treatment notes, indicate Plaintiff's HIV was asymptomatic and therefore found not to be a physical barrier/limitation to learning, a barrier/limitation to cognitive learning, a learning barrier/limitation to communication, and did not serve to as a limitation in range of motion or muscle strength. AR-21. The ALJ relied on Dr. Gallo's physical examination which indicated that Plaintiff had no physical restrictions or limitations. AR21, 31.

The ALJ also discussed the Psychological Impairment Questionnaire wherein Dr. Spektar indicated: Plaintiff had mild limitations in two subcategories of Understanding and Memory and a moderate limitation in his ability to understand and remember details; in the area of Sustained Concentration and Persistence, Plaintiff exhibited mild limitation in four subcategories and moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, to complete a normal workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without unreasonable number and length of rest periods. AR23. In the area of Social Interaction, Dr. Spektor opined Plaintiff only had a mild limitation. *Id*. In the area of Adaption, Plaintiff exhibited mild limitation in one subcategory but moderate limitations in the subcategories of ability to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places or use public transportation, to set realistic goals and to make plans independently. *Id*. Lastly, in response to an inquiry, Dr. Spektar noted that Plaintiff has experienced episodes of deterioration or decompensation in work or work like settings secondary to relational problems and legal matters. *Id*. Dr. Spektor also noted that while Plaintiff had a "low IQ" or reduced

intellectual functioning that results in difficulty communicating thoughts, processing abstract thought, reading and writing, as previously mention, he obtained a high school diploma, had a work history, and was able to perform his activities of daily living with much assistance. [4]

While Dr. Spektar reported that Plaintiff made several emergency visits after verbalizing suicidal ideation, the medical records also reflect that Plaintiff denied having any plans to act on those feelings. AR-31. The Court also reviewed the medical records and found no other reference to either passive or active suicidal ideation. A review of the medical records also indicates that Plaintiff's feelings of depression centered around his interpersonal relationships, primarily his interactions with his former wife.

Plaintiff contends that the opinion of his treating psychologist, Dr. Spektor, should have been given greater weight than accorded by the ALJ. Plaintiff contends Dr. Spektor's opinion was only given moderate weight, and that the opinions of consultants and one-time examiners were given far greater weight than permissible. He further suggest that to the extent Dr. Spektor's opinion conflicts with that of a one-time consultant, the Dr. Spektor's opinion should control.

Applying the regulations and the legal principles referenced, it is the Court's determination that the ALJ considered the treating physician's opinion and properly addressed where the treating physician's opinion was inconsistent with other substantial evidence in the record as required by 20 C.F.R. § 404.1527(d)(4). In her decision, the ALJ discussed Dr. Spektar treatment notes, diagnosis and findings of limitations. The law, however, does not require the ALJ to rely on the treating physician's opinions to the exclusion of other medical

---

[4]Although Plaintiff's IQ scores were low, the ALJ determined Plaintiff did not meet the criteria for mental retardation as defined by the regulations. Mental retardation is defined as a significantly sub average general intellectual functioning initially manifested during the developmental period (i.e., the evidence must demonstrate or support a finding that the onset of the impairment was before the age of 22). See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05.

evidence and facts contained within the record. Plaintiff testified that he was able to live and care for himself independently. AR-32, 241, 510. The ALJ noted that the evidence showed Plaintiff was able to drive himself to the psychiatric consultative exams and was able to perform activities of daily living without need of assistance. Plaintiff was able to cook, clean, do his laundry, shop, manage his finances, use mass transit and manage his relationships. The record also reviews that Dr. Miller and Kessler both opined that Plaintiff was capable of independently performing simple task, maintain attention, concentration and a regular schedule. AR-32. There was also evidence in the record that Plaintiff was not precluded from performing all work. Plaintiff testified that he was capable of performing a job that did not involve heavy lifting and was simple such as sweeping. AR-52. Evidence presented by a vocational expert identified six (6) jobs that a person with Plaintiff's limitations could perform. AR-56-59. In light of all the evidence, inclusive of the medical records, examinations, testimony and facts presented during the hearing, it is the Court's determination that the ALJ accorded the proper weight to Plaintiff's treating physician.

Generally, as is the case with most trier's of fact, an ALJ retains the discretion to assess a claimant's credibility. See *Fernandez v. Astrue*, No. 11-CV-3896 DLI, 2013 WL 1291284, at *14 (E.D.N.Y. Mar. 28, 2013) *citing Taylor v. Barnhart*, 83 Fed.Appx. 347, 350 (2d Cir.2003); *Correale–Englehart v. Astrue*, 687 F.Supp.2d 396, 434 (S.D.N.Y.2010). Such discretions permits an ALJ to accept or reject the testimony of a claimant provided she sets forth, with sufficient specificity, the basis for such determinations to permit intelligible plenary review of the record. *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988) citing *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983). An ALJ is not required to credit a claimant's subjective testimony about the severity of her pain and the

functional limitations caused (*Correale–Englehart v. Astrue*, 687 F.Supp.2d 396, 434 (S.D.N.Y.2010) quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir.2008), unless it is supported by other objective medical evidence. See 20 C.F.R. § 416.929; see also *Snell v. Apfel*, 177 F.3d 128, 135 (2d. Cir. 199). In instances where the claimant's testimony as to pain is not fully supported by clinical evidence, the ALJ must consider additional factors in his assessment, including: 1) the claimant's daily activities; 2) the location, duration, frequency and intensity of symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(I)-(vi).

Here, the ALJ found the Plaintiff's testimony lacking in credibility. The ALJ considered Plaintiff's ability to perform his activities of daily living with little to no restrictions. Plaintiff testified he was able to groom himself, pay his bills, cook and clean, do laundry and maintain an active social life. AR-21, 22, 32. The ALJ referenced Dr. Spektar's treatment notes which indicate that Plaintiff's emotional state was closely related to his relationship to his former wife, his girlfriends and fear of incarceration concerning a pending criminal matter. There was also evidence in the record that Plaintiff worked a few jobs in 2010 after filing he became disabled. AR-46, 119-20. Accordingly, the ALJ evaluation of Plaintiff's credibility was supported by substantial evidence in the record.

## CONCLUSION

For the reasons stated above, the Court adopts MJ Smith's R & R in its entirety. Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12(c) is DENIED, and the Commissioner's Cross-Motion for Judgment on the Pleadings pursuant to Rule 12(c) is GRANTED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 19 and 23, and to enter judgment in favor of the Defendant.

Dated: September 27, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN